IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EILEEN CARR; CLAYTON KOLB; SAMUEL STANTON; DONRICH YOUNG; JANE DOE I; JANE DOE II; and JANE DOE III, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GRAND CANYON UNIVERSITY, INC.; and GRAND CANYON EDUCATION, INC. d/b/a GRAND CANYON UNIVERSITY, <br><br> Defendants. | CIVIL ACTION FILE <br><br> NO. 1:19-cv-1707-TCB |

**O R D E R**

**I.    Background**

Plaintiffs Eileen Carr, Clayton Kolb, Samuel Stanton, Donrich Young, and Jane Does I, II, and III have brought this action against Defendants Grand Canyon University, Inc. and Grand Canyon

Education, Inc. d/b/a Grand Canyon University based on their contention that, contrary to the Defendants' representations, they are unable to complete their doctoral degrees in sixty credit hours. They contend that Grand Canyon University ("GCU") has designed its dissertation program so that doctoral students cannot complete their program and earn degrees in sixty credit hours in spite of contrary representations and contractual obligations.

Carr, Stanton, and Young completed admission applications and enrollment agreements. The enrollment agreements acknowledged that these Plaintiffs understand and agree that all programs of study are subject to the terms and policies in the enrollment application. These Plaintiffs, in conjunction with their applications, entered into arbitration agreements with GCU providing that they and GCU would submit "any and all claims to the decision of an arbitrator rather than a court." [14-3] at 8, 39; [14-4] at 8. The agreement states that it applies to "any dispute arising from my enrollment, not matter how described, pleaded, or styled . . . ." [14-3] at 7, 38; [14-4] at 7. Although they were given the opportunity to opt out, none of these Plaintiffs did so.

Nonetheless, Plaintiffs filed suit, asserting claims for breach of contract, fraud, intentional misrepresentation, unjust enrichment, and declaratory judgment. Defendants have moved to dismiss Plaintiffs' claims, contending that only Young is subject to this Court's personal jurisdiction and that the claims of Carr, Stanton, and Young must be arbitrated. Before the Court are Defendants' motion [13] to dismiss and motion [14] to compel arbitration.

## II. Discussion

### A. Motion to Dismiss

"In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1998). This standard is satisfied "if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). A party presents enough evidence to withstand a motion for directed verdict by putting forth "substantial evidence . . . of such quality and weight that reasonable

and fair-minded persons in the exercise of impartial judgment might reach different conclusions . . . ." *Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995).

In making this determination, the Court must construe the allegations in the complaint as true to the extent they are not controverted by the defendants' affidavits, and the facts must be viewed in the light most favorable to the plaintiffs. *See Morris*, 843 F.2d at 492. If the plaintiffs' complaint and the defendants' affidavits conflict, the Court must construe all reasonable inferences in favor of the plaintiffs. *Robinson v. Gianmarco & Bill, P.C.*, 74 F.3d 253, 255 (11th Cir. 1996).

The analysis of personal jurisdiction involves two questions: (1) whether Georgia's long-arm statute authorizes the exercise of personal jurisdiction, and (2) whether the exercise of personal jurisdiction is consistent with the Due Process requirements of the federal Constitution. *Murphy v. Aventis Pasteur, Inc.*, 270 F. Supp. 2d 1368, 1378 (N.D. Ga. 2003). In determining whether the exercise of personal jurisdiction over a defendant is consistent with due process, the fundamental inquiry is whether the defendant has "minimum

contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Defendants argue that Plaintiffs other than Young assert only causes of action that do not arise out of any activity Defendants conducted in Georgia. Plaintiffs counter that jurisdiction is proper pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). However, that statute convers only subject-matter jurisdiction, not personal jurisdiction.

Plaintiffs allege that Defendants regularly conduct business in this district. However, for the Court to have personal jurisdiction over Defendants, Plaintiffs' causes of action must arise out of or result from Defendants' activities in Georgia. *Pratt & Whitney Canada, Inc. v. Sanders*, 460 S.E.2d 94, 96 (Ga. Ct. App. 1995). Other than Young, who is a Georgia resident, Plaintiffs are not Georgia citizens or enrolled in the GCU program in Georgia. These Plaintiffs do not plead any facts that would show that Defendants' Georgia activities led to Plaintiffs'

5

claims. The claims asserted by Plaintiffs other than Young will therefore be dismissed for lack of personal jurisdiction.

### B.     Motion to Compel Arbitration

Generally, the question of arbitrability is a matter for the courts to decide. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Before a court can compel a party to arbitrate, it must be satisfied that the party actually agreed to arbitrate. *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1333 (11th Cir. 2005). The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, establishes a "federal policy favoring arbitration" and requires that courts "rigorously enforce agreements to arbitrate." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (first quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); and then quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Consequently, arbitration provisions are to be generously construed in favor of arbitration. *Moses*, 460 U.S. at 24.

Notwithstanding the strong federal policy favoring arbitration, no party may be forced to submit a dispute to arbitration that the party did

not intend and agree to arbitrate. *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1214 (11th Cir. 2011); *Kemiron Atl., Inc. v. Aguakem Int'l, Inc.*, 290 F.3d 1287, 1290 (11th Cir. 2002).

To determine whether arbitration should be compelled, the Court generally considers (1) the existence of a written agreement to arbitrate; (2) whether the issues sought to be arbitrated are arbitrable under the agreement; and (3) whether the party asserting the claims has failed or refused to arbitrate the claims. *Caley v. Gulfstream Aerospace Corp.*, 333 F. Supp. 2d 1367, 1373 (N.D. Ga. 2004); *Lomax v. Woodmen of the World Life Ins. Soc'y*, 228 F. Supp. 2d 1360, 1362 (N.D. Ga. 2002).

Here, Young does not argue that he did not sign an arbitration agreement or that his claims do not fall within the scope of that agreement. Instead, he contends that the agreement is barred by the so-called Borrower Defense Regulations. Defendants argue that the plain language of the regulations demonstrates that Plaintiffs' claims are not "borrower defense claims" under the regulations.

The Borrower Defense Regulations were designed to protect student loan borrowers in various ways, including by prohibiting schools that participate in the Direct Loan Program (such as GCU) from enforcing mandatory, pre-dispute arbitration agreements or class action waivers related to borrower defense claims as defined in 34 C.F.R. § 685.300(i)(1).

34 C.F.R. § 685.300(i)(1) defines a borrower defense claim as "a claim that is or could be asserted as a borrower defense as defined in § 685.222(a)(5), including a claim *other than* one based on § 685.222(c) and (d) that may be asserted under § 685.222(b) if reduced to judgment[.]" (emphasis added). Defendants argue that all claims that Plaintiffs assert are based on § 685.222(c) and (d) and, thus, do not fall within the definition of a borrower defense claim because they are included in the carve-outs.

Plaintiffs respond that their claims meet the definition of a "borrower defense" and therefore should not be subject to arbitration. They contend that the Court should read the definition of a "borrower defense claim" to include claims based on *all* borrower defenses

8

(including those based on § 685.222(c) and (d), as long as the claims can be asserted under § 685.222(b) if reduced to judgment).[1] However, as Defendants point out, Plaintiffs' construction of the regulations would render various provisions superfluous, including the separate definitions for "borrower defense" and "borrower defense claim." Further, the introductory language, "For the purposes of paragraphs (d) through (h) of this section," would be meaningless if the terms were construed identically.

Borrower defenses are available to students to avoid repayment of their loans, and the scope of such defenses is broad. However, borrower defense claims, for which institutions participating in the Direct Loan program agree not to arbitrate pursuant to a pre-dispute arbitration agreement, are construed in a more limited manner. Therefore, the Court concludes that sections 685.222(c) and (d) are borrower defenses (and not meaningless, as Plaintiffs argue), but claims under those

---

[1] Plaintiffs have filed a motion [23] for leave to file a surreply, attaching a proposed surreply brief. The proposed brief responds to Defendants' arguments regarding a brief filed by the Department of Labor in a separate proceeding. Because the Court does not rely on the Department of Labor brief or the parties' arguments regarding that brief, Plaintiffs' motion [23] will be denied as moot.

sections do not constitute borrower defense claims according to the statute.[2]

Section 685.222(c) includes breach-of-contract claims in which a student alleges that a school "failed to perform its obligations under the terms of a contract with the student." The first claim in Plaintiffs' complaint is for breach of contract, alleging that GCU breached contractual obligations "by failing to ensure that its dissertation chairs and committee members provide students with a prompt and meaningful feedback." [10] ¶ 103. The Court concludes that this claim falls within § 685.222(c) and therefore is not a "borrower defense claim" pursuant to 34 C.F.R. § 685.300(i)(1).

Section 685.222(d) includes any claim involving a "substantial misrepresentation" "that the borrower reasonably relied on to the

---

[2] The Court finds nothing in GCU's letter to its students or the pending state-court case to demonstrate that Defendants have taken inconsistent positions on the impact of the Borrower Defense Regulations. The letter to students applied to borrower defense claims which, as the Court has found, do not include the claims brought here. The state court case involved a motion to compel arbitration that was granted before the Borrower Defense Regulations were in effect. The Georgia Court of Appeals vacated the order and remanded the case to the superior court to allow it to consider the effect of the regulations. The superior court has not yet ruled post-remand.

borrower's detriment when the borrower decided to attend, or to continue attending, the school or decided to take out a Direct Loan." Plaintiffs' statutory fraud and intentional misrepresentation claims include allegations that GCU made misrepresentations that led Plaintiffs "to choose to enroll in a GCU doctoral program instead of a comparable program offered by another institution that could be completed in less time and for less money." [10] ¶ 122. They further allege that they "would not have enrolled in a GCU doctoral program had they known GCU's representation was false." *Id.* ¶ 132. The Court concludes that these claims fall within § 685.222(d) and, therefore, are not "borrower defense claims" pursuant to the definition of 34 C.F.R. § 685.300(i)(1).[3]

---

[3] The remaining claims are for unjust enrichment, which Plaintiffs assert is "pursued only in the alternative to Count One," [10] ¶ 136, and declaratory judgment, seeking a declaration that GCU's "arbitration clause and one-sided attorney's fee provisions are unenforceable . . . ." *Id.* ¶ 153. The Court concludes that the unjust enrichment claim is subject to arbitration for the same reasons as the breach-of-contract claim. Further, for the reasons discussed in the context of the motion to compel arbitration, the declaratory judgment claim fails and will be dismissed.

Because Young's claims are not "borrower defense claims" pursuant to 34 C.F.R. § 685.300(i)(1), they are not subject to the Borrower Defense Regulations. Therefore, Defendants' motion to compel arbitration as to Young's claims will be granted.

### III. Conclusion

For the foregoing reasons, Defendants' motion [14] to compel arbitration is granted with respect to Young, and Defendants' motion [13] to dismiss is granted with respect to the claims asserted by the remaining Plaintiffs and with respect to the declaratory judgment claim asserted by all Plaintiffs. The motion [23] for leave to file a surreply brief is denied as moot. The Clerk is directed to close this case.

IT IS SO ORDERED this 19th day of August, 2019.

_____
Timothy C. Batten, Sr.
United States District Judge